3-17-0-8-1-8, Patricia Neukirk, Executive Division, Ltd, v. Gregory Olmstead, v. The Peoria Surgical Group, Ltd. Please proceed. If we support, counsel. I'm Gregory Olmstead. I represent the appellant, Patricia Neukirk, in this case. This is a case of statutory construction. The case involves, only tangentially, the medical malpractice statute of limitations. The case directly involves the relation-backed statute found in section 2-6-16-B of the United Court of Civil Procedure. We're here because the trial court entered a dismissal, a 2-6-19 dismissal, based upon the statute of limitations. Specifically, the court relied upon the statute of repose found in the medical malpractice statute. I submit that the operative statute is the relation-backed statute. Although the two statutes coexist, they do not clash, the relation-backed statute is one that is not limited by time or contract. It specifically states that in the contract. I'm sorry, it states that in the statute. As justices know, we are to give the plain and ordinary meaning to a statute. We're not to locate it to a statute more than that's there. If the statute is clear and unambiguous, which this relation-backed statute is, it is the court's obligation to follow that statute. So what we have here is the trial court chose to read into the relation-backed statute a limitation by the statute of repose. The operative case here is the Illinois Supreme Court precedent of Porter v. Decatur Memorial Hospital, 2008 case. That case specifically gave the course of Illinois guidance going forward with regard to the application of the relation-backed statute. The Porter case is actually, having been a medical malpractice case, is actually pretty similar to our case, actually. Not with regard to the medical treatment, but with regard to the allegations in the original pleading and the allegations in the pleading that was attacked as not relating that. In Porter, the original complaint made allegations of vicarious liability against the hospital, Specifically, allegations were the nurses failed to make neural checks on a patient that was there following a motor vehicle collision and had sustained spinal injury. When the time came to file the amended complaint, the plaintiff shifted the landscape somewhat, quite a bit, actually, in Porter. In the amended pleading that was attacked in Porter, it actually pled a CT scan that was never pledged in the original complaint. It pled that specifically, it brought up another doctor's name as the agent of the hospital, a radiologist. This was in the amended complaint, and it said that, well, you misinterpreted the CT scan. And so the defendant's hospital said, well, that's a new allegation, that doesn't relate back, and you're out on the medical malpractice two-year statute of limitations. Porter didn't have a statute of repose element to it. It was within four years. The Fourth District agreed with the trial court, although the Supreme Court ended up chastising the Fourth District because it made a finding that it was an abusive discretion standard. When actually, the Supreme Court said specifically and unequivocally, this was a 2-6-19 dismissal, and it's a de novo standard of review. I don't think there's any question here that we have a de novo standard of review on a 6-19 dismissal. Anyhow, the Supreme Court in Porter said that amended pleading, which brings up for the first time the CAT scan, it brings up for the first time a radiologist's name on a vicarious liability case against the hospital, relates back to the original pleading. The reason it relates back is because under the relation back statute, it's arising from the same transactional occurrence. It's arising from the same setting of medical treatment. It's arising from the evaluation of a patient that's there with a apparent spinal injury being evaluated for treatment. And so the Supreme Court said it relates back and reversed the appellate court and the trial court. Our case is, again, fairly similar to Porter. Actually, when Porter was decided, our Supreme Court said, you don't even have to look back at all the previous cases for a relation back, interpreting the relation back statute, because actually the cases were a little bit unwieldy. The cases were all over the map. And in Porter, the Supreme Court said, take our opinion and look forward. And that's what I asked this court to do, to apply the precedent of Porter and find in our case that actually what are said to be new allegations, new theories of liability, are nothing but the sort. Our case is, in the truest sense of the word, amplification of the original pleading. The pleadings are all there before the court, and it shows that what we're dealing with in our case is a four-day hospitalization post-op from a colon resection surgery. And actually, what has been litigated in our case from the beginning has been the hospital discharge. That's been the crux of the litigation. There's no mystery to that. And so the defendants in our case, they come forward with their six-man cadence, and they say, oh, number one, it's the statute of repose. Number two, if you're going to apply the radiation ban, you can't apply it because we're prejudiced by the new allegations. Well, how are you prejudiced if you've been litigating, in this case, the hospital discharge from day one? There could not possibly be any prejudice. You might notice from the beginning of the gist of this case being, was it proper, was it safe to discharge Mr. Henry Newkirk at the post-op day number four from his colon resection surgery? There's no more to our case than that. The allegations show that. And yet they come forward with the defendants in our case and say, well, we didn't know anything about what we're bringing up with these new allegations. And again, these new allegations are simply an amplification of the allegations in the original pleading. The original pleading, in great detail, went through the hospital chart, realleged the events in the hospital chart. Actually, the operative period of time is the two days before the discharge. So we have a four-day hospitalization, but the operative allegations in the complaint, the original complaint, were the two days before the discharge, the hospital discharge. And we, again, in great detail, specifically, we just picked up these allegations from the hospital chart itself. We said, well, you know, he had an abnormal white count. He had a shift to the left in the white count the day before discharge. And we didn't evaluate the patient sufficiently before his discharge. Well, what ended up happening, the patient gets discharged on post-op day number four, and he goes home, and he doesn't make it more than 36 hours before he collapses and dies at home from an overwhelming bacterial infection in his belly, bacterial peritonitis. The coroner's report shows, and it's alleged in our complaint, the anastomotic device that was used in the surgery didn't stay intact. It came apart, and the contents of his colon leaked into his belly and caused this infection. The whole gist of the case is, well, he wasn't ready to be discharged. You shouldn't have been looking at him more carefully. He had a very pitful night the night before he was discharged. He needed oxygen. He had abdominal pain. And, again, the allegations from the hospital chart, you don't even look at his, you don't even take his blood the morning of discharge. You don't take his blood to check into that. Now, in the original complaint, you had general allegations of the symptoms, right? Oh, no, they were right from the hospital chart. I know, but then it got more specific in that last complaint, didn't it? Things got more specific. Well, it got more specific as to certain elements of the care and treatment, specifically nursing communication. The nurses weren't communicating with the physicians as to how long his, what his status was that night before discharge. Now, in the earlier complaint, within the statute, it gave titles to the people assisted, but didn't specify their exact names. With great specificity, we named the attending physicians, the physicians in training, also known as residents, the nurses, all as actual agents or apparent agents of the hospital and actually of the attending physicians of the other dependent imperial surgical hospitals. Did you use specific names? No, we did not use specific names. So that's one of the changes that happened. You talked about, I think some had titles. Right, they all had titles, attending physicians. But they weren't specifically named. No, but they were right there in the hospital chart. In the NORADU, you have to name, I don't know if I care to say it, but you don't have to name the agents. You never do. Or any of the respondents in the earlier case, in which we chose not to do in this case. The only one we named was the captain of the ship, Dr. Bonello, the actual surgeon. So we got off on this tangent in the circuit court on this 619 dismissal. The tangent we got off on was the statute of the post. Totally got off on it. It actually caught me a little bit by surprise in the initial hearing. And then what we didn't do, and I'll blame myself for this, is we didn't take the court to the specific language of the statute. Here, the statute says it's not limited by any time or contract. The statute of the post does not defeat the relation to that statute. And the court ended up saying it did. All the counsel for the defendant said it did. And actually, ironically enough, there was a case that was percolating at the time our circuit court dismissal came through. And that was the First District case of Lawler versus the University of Chicago Medical Center. In that case specifically, unequivocally, that case said the two statutes, the 212, 13-212 medical malpractice and the statute of the post, they coexist. They exist together. The malpractice limitation statute does not defeat the statute of the post. And it says you just have to look at the plain meaning of the statute. And looking at the plain meaning of the statute goes back to the case of Norton versus Rote, where our Supreme Court said, please, look at the plain meaning of the limitation statute. In that case, that case came out of the Third District where the dismissal on a death case because the death does not relate back. It was a discovery rule case. I'm sorry. It does not operate. The discovery rule does not operate where you have a death. Counselor, you have two minutes. Okay, thank you. And the Supreme Court said, no, no, look at the statute. That's not the case at all. It does operate. The discovery rule is in full operation. And my point here is that you have to look at the plain meaning of the statute in question. So what we have here is we have this overwhelming precedent that I wasn't able to bring the circuit court around to agree to follow. Well, a big issue in this case is using, I guess, the porter language is whether this is the same transaction or occurrence requirement. Right. So what we have is that we have the temporally, we have this four-day post-op hospitalization, and we have the decision to discharge. That's all we're litigating in this case. And that's what we're litigating now, and that's what we're litigating with the original claim. So you have, if you will, you have this box, and you put the four-day hospitalization in this box. And as we've been litigating, we never went outside that box. We stayed in that one box. We didn't go in. You did go in, but no one had a previous patient or had a similar experience. Well, that was only brought up in the context of, well, if you had this experience with that device. And it would falsify the discharge. I'll allege it. Post-operatively, can they have the conversation with the patient that, well, listen, you know, we're going to look, we're going to watch you carefully because of the experience that we had previously with this device. Maybe it caused a belly infection that could be fatal. That was in the context of the four-day hospitalization. That conversation should have occurred. We're not talking about an informed consent case. We're not litigating an informed consent case. Never went close to litigating an informed consent case here. So, again, we're staying precisely on the two days before the discharge from the hospitalization. Never strayed from the hospital chart itself. Vicarious liability. You can look at all the cases, particularly the Papakian v. Chumagarian case out of the First District 2002 case. It changed in the amended complaint. After the statute was imposed, it said the vicarious liability allegations are now against a different doctor. For a medication error in the appellate court, it said they're enough. That remains fair. Even though you're naming a different doctor on vicarious liability, it remains fair. Again, that's the amending case. Thank you very much. Thank you, Counsel. Thank you, Mr. Gordon, Counsel. I think there was a lot of moving parts that went into Judge McCuskey's ruling in this case. There was, in part, a consideration of whether the amendment to the complaint either could or should have been allowed in the first place. And as we pointed out in our brief, this was dealt with in the 2619 in part because on both occasions, the plaintiff filed a motion to leave the file of the amended complaint without attaching a complaint. And the relief that Judge McCuskey crafted was to say, instead of going through this process all over again, file your amended complaint and we'll take it from there. But as to the relation to that, I think what Judge McCuskey focused on was a couple of things. One is the identity of allegation from the original complaint to the proposed amendments. And two was the prejudice that he saw befalling the defendants if he were to allow those amendments to the complaint. As to that point, when I'm looking at the series of complaints, it can arguably appear that the transaction, when you're looking at whether or not the same transaction or occurrence as a requirement, because the Porter case is pretty broad. Porter, it could be argued, expanded a lot from other earlier cases dealing with relation back. And because there appears to me before Porter, I haven't been in trial just in 28 years, before Porter, the relation back had sort of different stance. So all of a sudden, Porter comes along and changes the operation, changes what we look at as judges. And the occurrence of transaction that the last complaint refers to is the same one referred to in the first complaint. In the last complaint, it appears they just got more specific on naming people from the charts and those kinds of things. Now they did toss in, it seems like one thing they tossed in that was new was this other earlier occurrence with a different patient and a different circumstance. But when you look at this transaction and occurrence, it looks like they just, they start naming people with specificity, although they were part of the occurrence of transaction before. It's just they weren't specifically named. In part, it's not true they weren't specifically named. I think that's true. And I would point out to you on that note the difference in language in the original complaint that was used as to OSF on the parent agency counts versus Peoria Surgical. I recommend Peoria Surgical. If you look at parent agency counts against OSF, what the plaintiff has alleged in the original complaint is that OSF is liable for its agents or parent agents, Julius Piniello, attending physicians and surgeons, residents, and nurses. So from day one, that's how it's described as to OSF. OSF is being told, in addition to Piniello, there's all these specific areas of practice whose conduct might be obligated in this case. In contrast, the complaint against Peoria Surgical simply said employees and or agents and or parent agents, including Piniello. And our position both in front of Judge McCuskey and to this day is that's not sufficiently specific to allow Drs. Crawford and Estes to effectively be brought in after the statute of limitations against them has run. This goes to the question of prejudice that Judge McCuskey was, I think, drawn to, which is, is there a prejudice to allowing this complaint to proceed with specific identification of Crawford and Estes at a point in time when you could not bring a complaint against them? And I would submit Crawford and Estes have a very real interest in this case if they're named in a complaint. As a matter of fact, whether they're a defendant or not, if money is paid on this case as a matter of either settlement or verdict or conduct by Crawford or Estes, that's their medical license that's implicated in that. That's their name that's going to be submitted to the National Practitioner Data Bank and the Illinois Department of Professional Regulation. It would have, and so that's a huge prejudice to them, and they may have had a much different perspective on the case had they been even indirectly implicated in the case. But you said even indirectly implicated, but by and through its employees or agents, including Defendant Julius Bonello, M.D. I mean, isn't that indirect? Well, it's about as indirect as you can get. I will agree with you on that. I mean, a broad instruction of that, that would also include the secretary, that would include the bookkeeper, that would include anybody who works with the Oregon Surgical. Colin, and with their allegations regarding charting and dictations of post-operative notes, I mean, don't those things all combine together put you at least on notice that they're not just talking about this particular physician, but others within that practice group and their agents, the secretaries, the PAs, the nurses, their medical records? Well, I guess my response to that would be as a defendant it's not my burden to announce, to plaintiff who the defendants should be. They've had this chart for going on six, seven years. They know who these people are. And this goes to the other point as far as the prejudice goes. What Judge McCluskey was attuned to is the fact that these amendments were being made and granted literally a week before the close of discovery. It was the final third amended complaint was filed on June 13th, 2017. That was two months, give or take, from after the close of discovery. And that was one month prior to the deadline for plaintiffs to disclose opinion witnesses. So it comes to the point in time when there's no opportunity for Crawford or Estes or anybody else to explore the specifics of those allegations. And ultimately I think there's really two different kind of categories of allegations that are raised in the new complaint. One is, in my read, the allegations implicating Crawford and Estes. And to me those are essentially trying to draw two new people into this case. And I think those are probably knocked out for the reasons we've discussed. The other category are the ones that Justice Carter talked about, which are the allegations against Dr. Bonello. Yes, Dr. Bonello has been a part of this case from day one. But the allegations in this new complaint really kind of expand, I think, outside that quote-unquote box of treatment. Plaintiffs' counsel wants to suggest that it's all squarely within admission to discharge. But I don't think that's necessarily true. When he's talking about this obligation to notify either other practitioners or to notify the patient themselves of previous bad outcomes with this device, to me that smacks of a presurgical-type communication. When he talks about falsifying medical records, that's decidedly a post-discharge thing because Bonello didn't do his discharge. And one of the allegations in the complaint is that some of this stuff happened after he was discharged. So those are things that were not within the sort of four corners of the complaint from the outset. Well, you drew a 619 motion, not a 615 motion. True. You didn't ask to strike a certain element of the complaint, did you? We did not. You went the whole thing out. Right. I mean, there's a difference between that with striking some paragraph. Right. Versus... I mean, we could have thought it was a 619.1 hybrid, I suppose. You know, when you refer to the prejudice regarding malpractice insurance and your name in the black book sort of about the doctors, because once your name's in that black book that there's a problem, and certainly that's been said of every physician, every professional. But that's not the prejudice that Porter talks about, is it? The kind of prejudice that is looked at is whether or not that the requirement is found upon the belief that a defendant who has been made aware, a defendant who has been made aware of the occurrence of transaction upon which a claim is raised, whether or not that was done or not. So in the original complaint, Bonello and, it's referred to, everybody connected with that group, they would arguably, were they put on notice, then? It's a bit of the other... Because they say in sort of broad terms, both regarding the hospital and the contractor, Bonello, right? Right. I guess my position is I don't think that there is sufficient notice. I mean, from the McCord case, the court says, would the preparation of a defense to the original complaint have included a defense to these new allegations? And I don't see how reading that original complaint would naturally lead to where it may be specifically Bonello and generically anybody else in the universe of care, how that would naturally lead Crawford... Well, they were directly involved in this, in the care of the same occurrence of transaction. Crawford was involved in the surgery itself with Bonello. He was the assistant. Estes was in attending during the subsequent three days. And the transaction in occurrence here is that period of time, what, four or five days? Correct. Correct. Which leads to one other allegation that's brought into this new complaint. And to some extent, I think that the court needs to look at the allegations one by one and can't necessarily toss them all. But if you're not inclined to do that, look at them one by one. Because one of the other ones is an entirely new claim of negligent supervision of resident staff. Now, that's nowhere alluded to in the original complaint. Even if I was inclined to take that original complaint and read that nonspecific language that implicated Dr. Estes, there's nothing in there that would give Dr. Estes any reason to think four years from now you're going to be called to answer for supervising the resident staff of the hospital. So that's a completely new allegation that's being brought against him virtually at the close of discovery and at the inception of extra discovery. But this is, I mean, we're really going to appeal on the 619 motion. Right. And there's not a motion to, like, strike a paragraph or two at this juncture? No. But I think the court can rule whether the court was appropriate as to all of the complaints or parts of the complaint. And, of course, the reason I'm asking this question is, as a trial judge, before the relation of that, there was, I guess, mistakenly thought it was stricter than Porter, than the Porter case came out. And I think that generally the people in this field, especially in malpractice, saw a shift when Porter came out. In fact, they said, don't look at the old cases anymore, basically, didn't they? Right. So that's the reason I'm asking about this concept of prejudice. Prejudice isn't the fact that we can be, that they sort of talk about Porter. Isn't the fact that just being sued for malpractice, certainly anybody who's sued for malpractice, lawyer, doctor, they feel prejudice. Right. But that's not the kind of prejudice that Porter talks about. Well, I think Porter would suggest it's more prejudice of notice from the original complaint or... Yeah, if you're made aware, really, if you have somehow been made aware of what's going on. I guess from a personal and practical standpoint, so this being all I do, medical malpractice is not the public work, but medical malpractice is the best work, the idea that you can file a complaint in a fact-leading state where the defendant is under the statute entitled to be notified of the claim being brought against them. You can litigate that for four years. You can litigate that for between one and two and a half years after the last participant is deposed. And on the eve of or at the close of discovery, you can discover, aha, this was never about this person or that aspect of the case. This was about these guys or supervision or failure to notify somebody of a bad anastomotic outcome six or eight months previously. That's the prejudice, and that's, to me, not just this case, but a lot of these cases, what we fight against and what creates a detrimental effect for defendants in these cases. One of the key issues here is whether the defendant or the defendants here were they made aware of or were they aware of the occurrence or transaction in which the claim against them is being nominated. Well, they were aware of the occurrence or transaction because at the time they were involved in the treatment, but nothing about the complaint, nothing about the litigation for the four years until the amendment suggested that they were the target of that specifically. I mean, when I say it that way, I mean, there's a case, an older case that talks about whether or not the claims were liberally construed to be amended after the statute of limitations in the Rommel and Zell case, which is Z versus Wheeler, and they talk about prejudice and that kind of thing. That's a phrase from that case, the way they talk about prejudice. Right. And I think that's the sort of prejudice that we're talking about in this case, aside from the professional liability prejudice. But most of those cases, don't they deal with when they seek to amend after the close of discovery, and then of course the prejudices say, I don't have any opportunity now to go in and develop my defense now that discovery is closed. I mean, isn't that usually where the argument of prejudice is? I mean, like you said, discovery was nearing an end, but it hadn't yet closed. The motion for leave to file the second amendment complaint was filed on March 30, 2017, and the court ordered the plaintiff to file the second amendment complaint within 14 days. The plaintiff filed that on April 13. In fact, discovery closed on the 20th, and then this last amendment happened a month after that. So discovery closes April 20, 2017. Leave is granted to file this third amendment complaint May 30th. So that's exactly this case. Okay. Because you had earlier mentioned that this was all disclosed just as discovery is ending that fight. Right. I misspoke. What I meant is the process of these final two amendments sort of straddles the close of discovery. It started with the motion to file the second amendment complaint a week or so before the close, and it concludes with the filing of the third amendment complaint roughly a month after the close of discovery, and roughly a week or 10 days before the deadline for plaintiff to disclose extra witnesses is where we are. Thank you, counsel. Thank you. Counsel? Very briefly. It is true that you fill in a couple more paragraphs in your complaint, right? It's an amplification of the same allegations, the same transactional occurrences. Well, what about the complaint about oversight beforehand and so forth that perhaps your opponent talked about? That goes to the chart itself where the full signing of the resident's discharge note. The resident writes that this is all electronic medical records, so it gets a little unreal. The resident enters the discharge note. Dr. Estes does not co-sign it until the following morning after the patient is out of the hospital. So those are allegations. Part of the allegations are, well, Dr. Estes, you didn't look at the patient. You didn't examine him before he left the hospital before he was discharged. What about this discovery issue? Oh, so there was never any disclosure by the defendants of their trial witnesses up to April of 2017. I had to do a whole sheet of compel to get them to disclose their trial witnesses, which they did. And those trial witnesses all lined up for all the witnesses in our case. It's not as if their trial witness disclosure all of a sudden became unmanageable because of the new allegations. It's all the same players. Are the new names specifically named people put in some kind of punch where there could be an offense of a lawsuit? So they're not. Interestingly enough, the Quinn-Jackson firm originally appeared for both the Peoria Surgical Group and for Dr. Bonello individually. And that was in May of 2013. And then in April of 2014, they split and they withdrew for Bonello individually. And the Livingston firm came in for Bonello individually. And because all this was known, they knew of what was developing with the allegations. It has the potential conflicts with Dr. Estes and Dr. Crawford and Dr. Bonello and the group. And so they stood off in a separate council. And that was litigated for four years with a separate council for each. Everyone there was opposed. We went to Kansas City. We went to Miami. We went all over the country, Boston in this case. And everyone who was opposed was represented by a council. Dr. Estes was represented by the Quinn-Jackson firm as Peoria Surgical Group's council. Dr. Henriquez, when he went to Miami for his death, the resident, was represented by Lois F's council. Also when he took the first part of his death in Boston. So there was no prejudice. They were all on notice from the beginning. But I mean, that's not, in my experience, that's not uncommon to after an earlier detention in the case where one firm or one attorney represents the defendants. And then later on, even when they're on the same page in their respondent, you know, they're either directly responsible or are responsible under the respondent's peer, they start getting new lawyers that's more cross-examination more, unless the judge does something there. About how many people can be examined, how many attorneys. That's not uncommon. This occurred early on. This occurred in 2014, early on in litigation for discriminatory purposes. The point is that they were on notice in the beginning. This case was all about the hospital discharge and the care and treatment leading up to that discharge and what was done and what was not done. The Zee versus Wheeler case that your Honor pointed out, that case, interestingly enough, was a premises liability case. The amended complaint alleged a completely different location of the accident. Blocks away from what was alleged in the original complaint. The court said, well, you can't have the same transaction or occurrence if in your amended complaint you're alleging a completely different location of the injury. And so the court said, no, it doesn't relate to that because it's not the same transaction or occurrence. It's just not. And so again, Porter, in the Waller case, under statute of repose, actually being elevated and not being defeated by the statute of limitations, by the statute of repose, the Porter case directly on point, all the courts in this state going forward are to look to Porter, look to those specific facts, look how the amended claim that he's getting allegations of a new diagnostic test CAT scan, which was not in the original claim, was deemed to be laid back because it was from the same transaction or occurrence. It was on the same medical treatment. And a new physician was added to the amended complaint in Porter, and that was deemed to be a vicarious liability. And that was a radiologist, and that was deemed to be laid back, even though the CAT scan, more than one hasn't been said about the CAT scan in the original claim. Porter was directly on point. Porter controls all the regulations of statute interpretation going forward in this state, and there's no reason to not follow through with the facts in our case. I, unlike Justice Carter, I was a trial court judge, but primarily in the area of criminal law. So I admit my question may be stupid. But let me ask you this. The surgical group knew in the first complaint that one agent was accused of acting inappropriately. So Peoria Surgical had noticed that one person didn't follow a standard of care. When the third amended complaint was filed, you didn't add any doctors individually, am I correct? Right. But you said to Peoria Surgical, just kidding, it's not just one. There's now three doctors. Am I looking at this incorrectly? No, you're not looking at it incorrectly. However, those three doctors were all involved from the beginning. There were two attending surgeons that followed the patient post-operatively, Dr. Crawford and Dr. Esselstyn. But they weren't named in the lawsuit. Their conduct wasn't named in the lawsuit. It doesn't matter the identity of the agent. It just matters what the operative effects are on negligence. Yeah, but you didn't just change the identity of the agent. You kept Dr. Bordello or whatever, Bonello, sorry, and then you added other agents. Is there a distinction there that I should be looking at? Well, we didn't actually add agents because those agents were in from the beginning. You named additional agents. Employees and agents were named from the beginning. And if I understand your point correctly, they were deposed. These additional doctors were deposed and they had lawyers there. But if their precise conduct wasn't at issue in the first complaint, when they're deposed, wouldn't they be deposed differently in light of the allegations in the third complaint? No, not at all, because it was the same operative facts. Although the electronic record was not clear in all cases, and there was elucidation of facts based on depositions. Actually, Dr. Esselstyn was deposed, wasn't presented for deposition, but after the four-year statute of repose. One last stupid question. If we rule in your favor, are we saying there can be a fourth amended complaint that could be broader yet? Not broader, because this is not about broader. You could add more agents of the surgical group? Possibly? At this point, I don't see that yet. Could, depending on what discovery? It's not concluded. Well, I appreciate your indulgence. And I have done what counsel suggested that I do, is compare every count of the first and the third. So that's the source of my inquiry. And thank you. And thank you. I forgot to point out that the record on appeal, the complaint that was filed in the circuit court, they left out two pages of the filed complaint, pages two and three. And so I want to point out to the court that you have to go to the exhibits on the motions to dismiss to find the full intact amended complaint, third amended complaint. And that is at, what's that various parcel? Would you be opposed to making it easy for us and just supplementing the record or supplementing your appendix? Oh, I could do that. So what we did is that we copied the, directly out of the record on appeal, we copied the third amended complaint. And then I'm looking at the appendix. And I'm saying, it's missing pages two and three. And then I go back to the record. Well, the complaint they filed was missing pages two and three. Well, it's important because the record is so large, we do rely on the appendix. But I'll leave it up to Justice Carter to dictate how that should be addressed. Nobody has any objection to filing page two and three? No objection. File two and three with the court. Thank you very much. I'll do it in seven days. Okay. No objections? No, Your Honor. Thank you very much. Thank you. We'll take a break now for panel change.